UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GRACE A. DISARNO,

                                  Plaintiff,

            -vs-

                                                06-CV-0461-JTC

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                                  Defendant.

---

Plaintiff Grace A. DiSarno initiated this action pursuant to section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), to review the final determination of the Commissioner of Social Security (the "Commissioner") denying plaintiff's application for disability insurance benefits. The Commissioner has filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, and plaintiff has filed a cross-motion for judgment on the pleadings. For the following reasons, the Commissioner's motion is denied, and plaintiff's cross-motion is granted.

## **BACKGROUND**

Plaintiff was born on July 24, 1967 (Tr. 22).[1] She applied for disability insurance benefits on October 30, 2002, and again on August 13, 2003, alleging disability as of December 2001 due to a neck and back disorder (Tr. 71-73, 74-76).[2] Her applications

---

[1] References preceded by "Tr." are to page numbers of the transcript of the administrative record, filed by defendant as part of the answer to the complaint.

[2] Because plaintiff's August 2003 application was filed within 12 months of the initial denial of the October 2002 application, the prior application was reopened and consolidated with the 2003 application. *See* Tr. 12 (citing 20 C.F.R. § 404.988).

were denied at the initial level of agency review (Tr. 22). Plaintiff requested a hearing, which took place on September 13, 2005 before Administrative Law Judge ("ALJ") Marilyn Zahm (Tr. 12-21). Plaintiff appeared and testified at the hearing, and was represented by counsel.

In a decision dated March 28, 2006, ALJ Zahm found that plaintiff was not disabled within the meaning of the Social Security Act (Tr. 12-21). After outlining the sequential evaluation process set forth in the Social Security Administration Regulations (*see* 20 C.F.R. § 404.1520), the ALJ reviewed the medical evidence and determined that plaintiff's impairments, while severe, did not meet or equal the criteria of an impairment listed in the Regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ considered plaintiff's allegations and testimony regarding her functional limitations, but found plaintiff to be "not entirely credible" in this regard (Tr. 20). The ALJ then found that plaintiff was not disabled because she was capable of performing her past relevant work as a counter clerk (Tr. 20-21). The ALJ's decision became the Commissioner's final determination on May 12, 2006, when the Appeals Council denied plaintiff's request for review (Tr. 4-6).

Plaintiff then filed this action on July 13, 2006, pursuant to the judicial review provision of 42 U.S.C. § 405(g). On January 17, 2007, the Commissioner filed a motion for judgment on the pleadings on the ground that the ALJ's determination must be upheld because it is supported by substantial evidence in the record (*see* Item 6). Plaintiff responded by filing a cross-motion for judgment on the pleadings, arguing that the denial of her application should be reversed because the ALJ failed to give the appropriate weight to the opinions of plaintiff's treating sources, resulting in erroneous findings regarding the

severity of her impairments and her residual functional capacity to perform light work (*see* Item 9).

For the reasons that follow, the Commissioner's motion for judgment on the pleadings is denied, and plaintiff's cross-motion for judgment on the pleadings is granted.

## **DISCUSSION**

### I.   Scope of Judicial Review

The Social Security Act states that upon district review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to the fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. V. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004). Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try a case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401. The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir, 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1141 (E.D. Wis. 1976),

*quoted in Gartmann v. Secretary of Health and Human Services*, 633 F. Supp. 671, 680 (E.D.N.Y. 1986). The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Smith v. Massanari*, 2002 WL 34242375, at *4 (W.D.N.Y. March 17, 2002) (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)).

**II.     Standard for Determining Eligibility for Disability Benefits**

To be eligible for disability insurance benefits under the Social Security Act, plaintiff must show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .," 42 U.S.C. § 423 (d)(1)A), and is "of such severity that she is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1505(a)*.*

The Regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings. If the

impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work. Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and residual functional capacity. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari*, 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined that the plaintiff has not engaged in substantial gainful activity at any time relevant to the claim (Tr. 15). Upon review of plaintiff's medical records and in accordance with the second step of the sequential evaluation, the ALJ found that plaintiff suffers from a severe combination of neck and back disorders (Tr. 15). After considering the medical evidence in the record, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that her statements concerning the intensity, duration, and limiting effects of those symptoms were not entirely credible (Tr. 20). Accordingly, the ALJ determined that plaintiff's impairments, while severe, did not meet or equal the severity of an impairment in the Listings–specifically, Listing 1.00 (musculoskeletal system) (Tr. 15). Proceeding to

step four of the evaluation process, the ALJ determined that plaintiff retained the residual functional capacity to perform light work (Tr. 20).  Based on this finding, the ALJ determined that plaintiff could return to her past relevant work as a counter clerk (Tr. 20-21).

Upon reviewing the ALJ's determination, and considering the administrative record as a whole, the court finds that the ALJ did not follow the requirements for evaluating the opinions of plaintiff's treating physicians set forth in the Regulations at 20 C.F.R. § 404.1527(d)(2), and remands the case to the Commissioner for reconsideration of plaintiff's application in light of those requirements.

### III.   Evaluation of Treating Physicians' Opinions

As this court has noted on several occasions, the Social Security Regulations require that the opinion of a claimant's treating physician which reflects judgments about the nature and severity of the claimant's impairments must be given "controlling weight" by the ALJ, as long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R. § 404.1527(d)(2); *see also Rosa*, 168 F.3d at 78-79.  As explained in the Regulations:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2).

If the opinion of the treating physician as to the nature and severity of the claimant's impairment is not given controlling weight, the Regulations require the ALJ to apply several factors to decide how much weight to give the opinion, including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Clark v. Commissioner of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). The ALJ must "always give good reasons" in the notice of determination or decision for the weight given to the treating source's opinion, 20 C.F.R. § 404.1527(d)(2), and "cannot arbitrarily substitute his own judgment for competent medical opinion." *Rosa*, 168 F.3d at 79 (internal quotation omitted); *see also Rooney v. Apfel*, 160 F. Supp. 2d 454, 465 (E.D.N.Y. August 14, 2001).

As explained by the Social Security Administration, when the ALJ's determination:

> is not fully favorable, *e.g.*, is a denial . . .[,] the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996).

In this case, plaintiff contends that the ALJ failed to follow these requirements with respect to the evidence and opinions provided by Dr. William Capicotto, plaintiff's treating orthopedic surgeon. As the medical records reflect, Dr. Capicotto first examined plaintiff on July 17, 2003 (Tr. 198-200). He noted that plaintiff had been involved in a motor vehicle crash on December 21, 2001, and had suffered severe pain since that time. She had received appropriate care from her family practitioner, Dr. Eric Goodwin, and chiropractic

care was also helpful, but a brief return to work in March 2003 for approximately two months had exacerbated the pain in her "neck, mid back and low back" (Tr. 198). Upon examination, Dr. Capicotto found plaintiff's cervical spine to be severely tender from C4 to C7, with mild tenderness above and below. Her cervical spine exhibited limited range of motion, and its musculature was in spasm. Her thoracic spine was also severely tender from T5 to T11. She exhibited weakness in her upper extremities and decreased sensibility at C6 on the left. Dr. Capicotto placed her on "temporary total disability" for six weeks, until she could be seen again in his office. He prescribed pain medication and physical therapy, and ordered MRIs of her thoracic, cervical, and lumbar spines (Tr. 199).

Plaintiff saw Dr. Capicotto again on October 29, 2003. He reported that plaintiff's "overall situation is worsening" (Tr. 322). Both neck pain and thoracic pain were "ten out of ten," shooting into her arms and legs (*id.*). MRIs taken on July 23, 2003 "showed a protrusion on the right side at C4-5, in addition to herniations at T6-7 and T9-10" (*id.*). Upon physical examination, she appeared fatigued and in pain. There was tenderness in her cervical, thoracic, and lumbar spines, and she continued to exhibit muscle weakness, motor point tenderness, and decreased sensitivity of the upper extremities (Tr. 322-23). She consented to having a discography performed in hopes of finding an operable "pain generator" in her cervical spine (Tr. 323). Dr. Capicotto stated that plaintiff remained "totally disabled from the injuries that she suffered on 12/21/01. She may ultimately require cervical and thoracic spine surgery. I do not believe that she is going to find improvement without surgery. It has been almost two years since injury and she continues to suffer immensely" (*id.*).

...

The discography and post-discographic CAT scan were performed on January 15, 2004, and the results were reported by Dr. Capicotto following plaintiff's visit on January 30, 2004 (Tr. 307-08). After a lengthy "informed consent" discussion, plaintiff indicated that she would like to go ahead with surgery for anterior cervical discectomy and fusion at C3-4 and C4-5 (Tr. 308). She remained "fully disabled" from the December 21, 2001 injury (*id.*).

The surgery was performed by Dr. Capicotto on March 5, 2004 (Tr. 300-09). Upon follow-up examination on June 8, 2004, Dr. Capicotto continued to report plaintiff's condition as "100% causally related to the 12/21/01 motor vehicle crash" (Tr. 295). On August 10, 2004 (5 months after surgery), she was "doing quite well" and rated her pain at 4 out of 10 (Tr. 293). However, examination revealed severe tenderness of the lumbar spine as well as compromised gait. Dr. Capicotto recommended discography and CAT scanning in anticipation of lumbar spinal surgery, causally related to the injuries suffered in December 2001 (*id.*).

The results of the discography/CAT scan of plaintiff's lumbar spine, performed on September 28, 2004, were reported by Dr. Capicotto as "dramatically positive at L5-S1 showing annular tearing with disc herniation and reproducing her pain" (Tr. 280). He scheduled a lumbar laminectomy with discectomy and posterior lumbar interbody fusion using allograft bone struts and L5-S1 bilateral posteolateral fusion using allograft bone graft and bone marrow aspirate, in addition to spinal instrumentation with titanium screws and rods" (*id.*). Plaintiff remained "totally disabled" from the injuries she suffered in December 2001 (Tr. 281).

The second spinal fusion surgery was performed by Dr. Capicotto on February 11, 2005 (Tr. 253-79).  On follow-up examination on March 15, 2005, Dr. Capicotto found that plaintiff had improved overall, but pain was still rated at 8 out of 10 (Tr. 251).  She remained "totally disabled for a full six months" after the surgery, 100 percent causally related to the December 2001 injury (Tr. 252).

Dr. Capicotto examined plaintiff again on May 10, 2005 (Tr. 386-87).  She was recovering well from the February surgery, reporting low back pain at 7 out of 10 and approximately 25 percent improvement (Tr. 386).  Dr. Capicotto also noted that plaintiff was taking more pain medication than he preferred, and he changed her prescription from OxyContin to hydrocodone.  He also prescribed pool therapy and recommended that she "try to get out and walk a bit more" (*id.*).  She remained "totally disabled for the next few months" (Tr. 387).

Significantly, there is nothing in the March 28, 2006 hearing determination to indicate how much weight, if any, ALJ Zahm gave to Dr. Capicotto's opinion as to the nature and severity of plaintiff's neck and back problems during the relevant 12-month period after her alleged onset date of December 21, 2001.  As the above discussion indicates, Dr. Capicotto's treatment of plaintiff between July 2003 and March 2005 included two spinal fusion surgeries, along with numerous physical examinations and diagnostic tests.  His opinion throughout the course of this treatment–rendered as plaintiff's orthopedic specialist and well supported by substantial evidence of medically acceptable clinical and laboratory diagnostic techniques–was that plaintiff was totally disabled from work as the result of the injuries she suffered in the December 2001 car accident. Yet, the ALJ makes no mention at all of this opinion, and there is no discussion of the length,

nature, and extent of Dr. Capicotto's treatment relationship with plaintiff, the evidence he relied upon to support his opinion, or the consistency of this opinion with the record as a whole.

In short, it is clear from this court's review of the hearing determination that the ALJ failed to give good reasons–or any reasons at all–for rejecting the opinion of Dr. Capicotto, "the medical professional[ ] most able to provide a detailed, longitudinal picture" of plaintiff's disabling back and neck problems. 20 C.F.R. § 404.1527(d)(2). Based on this review, and after considering the administrative record as a whole, the court concludes that the ALJ's determination was not in accordance with the requirements of the Regulations, the interpretive Social Security Administration rulings, and the case law, with the result that the ALJ improperly disregarded highly relevant evidence about the nature and severity of plaintiff's impairments and her residual functional capacity to return to her past relevant work.

**IV.     Remedy**

Under the judicial review provision of the Social Security Act, the court has the authority to affirm, reverse, or modify a final decision of the Commissioner with or without remand. 42 U.S.C. § 405(g); *see Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004). Ordinarily, remand for further administrative proceedings is the appropriate remedy where the ALJ has failed to apply the proper legal standard, and where additional findings or explanation will clarify the rationale for the ALJ's decision. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (citation omitted); *see also Stadler v. Barnhart*, 464 F. Supp. 2d 183, 187, 190 (W.D.N.Y. 2006) (remanding for further proceedings where ALJ failed to provide good

reasons for weight given to treating physician's opinions).  By contrast, when there is "persuasive proof of disability" in the record, and additional administrative proceedings would serve no purpose but further delay, the court may direct a remand solely for calculation of benefits.  *Rosa*, 168 F.3d at 83; *Stadler*, 464 F. Supp. 2d at 187; *see also Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996) (absent sufficient evidence of disability, delay alone is not a valid basis for remand solely for calculation of benefits).

In this case, the court's review of the record suggests that remand for further proceedings is the appropriate remedy, both because the ALJ failed to properly assess the weight to be accorded the opinions of Dr. Capicotto, and because "further findings would . . . plainly help to assure the proper disposition of [the] claim[.]"  *Rosa*, 168 F.3d at 83; *see also Butts*, 388 F.3d at 386.  On remand, the ALJ should consider the evidence and opinions provided by Dr. Capicotto as to the nature and severity of the plaintiff's impairment, as well as any other evidence relevant and material to plaintiff's claim.  The ALJ should indicate in a written determination the specific reasons for the weight given to that evidence, in accordance with the requirements of the Regulations as outlined above.

Finally, in light of the long pendency of plaintiff's applications, the court–as well as the Commissioner–must be particularly "mindful of the often painfully slow process by which disability determinations are made, and that a remand for further evidentiary proceedings (and the possibility of further appeal) could result in substantial, additional delay."  *Butts*, 388 F.3d at 387 (internal citations and quotation marks omitted).  Therefore, the court directs that the further proceedings before the ALJ be completed within 60 days of the entry date of this order and, if that decision is a denial of benefits, a final decision of the Commissioner be rendered within 60 days of plaintiff's appeal from the ALJ's

decision. If these deadlines are not observed, the Commissioner must make an immediate calculation of benefits then owed to plaintiff. *See id.*

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Item 5) is denied, and plaintiff's cross-motion for judgment on the pleadings (Item 9) is granted. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's determination is reversed, and the case is remanded to the Commissioner for further proceedings in accordance with the matters discussed herein.

The Clerk of the Court is directed to enter judgment in favor of the plaintiff.

So ordered.

               \s\ John T. Curtin
               JOHN T. CURTIN
              United States District Judge

Dated: May 2  , 2008